**OTIS STEEL PRODUCTS CORPORATION**

v.

**The UNITED STATES.**

No. 414–60.

United States Court of Claims.

May 10, 1963.

938

John J. Schlick, Washington, D. C., for plaintiff.

Edgar H. Twine, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before JONES, Chief Judge, and WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

WHITAKER, Judge.

In response to defendant's invitation to "small business concerns", plaintiff submitted the low bid and was awarded the contract. Later, when plaintiff refused to perform the contract, it was terminated and relet to another at a price above plaintiff's bid. Excess costs were assessed against plaintiff, which it paid. It now sues to recover them.

It alleges that its contract with defendant was unenforceable for two reasons: first, because it made an error in its bid, "which was known or should have been known to the contracting officer"; second, that at the time the contract was awarded to it, it was ineligible to receive it, because it was no longer a "small business concern."

The case is before us on motions for summary judgment by both parties.

It is the second ground upon which plaintiff chiefly relies. The first ground is not mentioned in plaintiff's brief. It did submit that ground to the Comptroller General when it was seeking cancellation of the contract, but the Comptroller General decided it adversely to plaintiff, and plaintiff now seems to have abandoned it. At any rate, plaintiff's bid was not so out of line as to put the contracting officer on notice that a mistake had been made.

Plaintiff's bid was submitted on March 11, 1958. On April 1, 1958, Mr. L. R. Smith, plaintiff's sales manager, said no error in pricing had been made, but that in bidding on items 1(1) and 2(1) he had intended his bid to be on an all or none basis, but would accept an award for item 2(1) only if insistence on the all or none basis would jeopardize the company's position with the Government. Plaintiff was awarded the contract for item 2(1) only on April 25, 1958.

Plaintiff's chief reliance is on its ineligibility as a small business concern to receive the award.

It is conceded that only a small business concern, as defined in the Small Business Act and regulations, was eligible to bid and to receive the award. It is also conceded that when plaintiff put in its bid on March 11, 1958, it represented that it was a small business concern, and that it was one in fact. However, on April 17, eight days before the award was made, all of plaintiff's stock had been acquired by General Fireproofing Company, which was not a small business concern. Neither plaintiff nor General Fireproofing Company nor any one else notified the contracting officer of this fact, and he was unaware of it when he awarded the contract to plaintiff.

The Small Business Act of 1953, as amended, 67 Stat. 232, 15 U.S.C. § 631 et seq. (1958 ed.), was designed to set aside certain contracts for the benefit of small business concerns. Such a concern was defined in the Act only in general terms, the detailed definition thereof

being left to the Administrator of the Small Business Administration, which was created by the Act. Section 203 of the 1953 Act (section 632 of 15 U.S.C. 1958 ed.) defined a small business concern as follows:

"For the purposes of this chapter, a small-business concern shall be deemed to be one which is independently owned and operated and which is not dominant in its field of operation. In addition to the foregoing criteria the Administrator, in making a detailed definition, may use these criteria, among others: Number of employees and dollar volume of business. * * *"

Section 637(b) of 15 U.S.C. (1958 ed.) imposes this duty on the Administrator:

"It shall also be the duty of the Administration and it is empowered, whenever it determines such action is necessary—

* * * * * *

"(6) to determine within any industry the concerns, firms, persons, corporations, partnerships, cooperatives, or other business enterprises which are to be designated 'small-business concerns' for the purpose of effectuating the provisions of this chapter. To carry out this purpose the Administrator, when requested to do so, shall issue in response to each such request an appropriate certificate certifying an individual concern as a 'small-business concern' in accordance with the criteria expressed in this chapter. Any such certificate shall be subject to revocation when the concern covered thereby ceases to be a 'small-business concern'. * * *"

Pursuant to the power thus granted, the Administrator promulgated a regulation (13 CFR § 103 (1958 Supp.)) which reads in part as follows:

"§ 103.1 Purpose. This part establishes criteria and procedures to define and determine which concerns are 'small business concerns' within the meaning of the Small Business Act of 1953, as amended (referred to in this part as the 'act').

* * * * * *

"§ 103.3 Determination of small business for Government procurement.—(a) General definition. A small business concern for the purpose of Government procurement is a concern that (1) is not dominant in its field of operation and, with its affiliates, employs fewer than 500 employees, or (2) is certified as a small business concern by SBA.

* * * * * *

"(b) Status through representation. In the submission of a bid or proposal on a Government procurement, a concern which meets the criteria of paragraphs (a) or (b) of this section, and which has not previously been denied small business status by SBA, may represent that it is a small business. In the absence of a written protest, such concern shall be deemed to be a small business for the purpose of the specific Government procurement involved * * *."

Section 103.5 of the regulation provides for protests by bidders against the small business status of any other bidder or for the questioning of such status by the contracting officer, and for a decision on the status of the questioned concern by the Small Business Administration.

Since the bids we are considering were solicited by the Rossford Ordnance Depot, the Armed Services Procurement Regulations are also pertinent. ASPR 1–703, July 19, 1957, provides, in part:

"1–703. Determination of Status as Small Business Concern.

"(a) Except as provided in (b) below, the contracting officer shall accept at face value * * * (ii) a statement by the bidder or offeror that it is a small business concern (see ASPR 1–701.1 and 1–701.4) and that it has not previously been denied small business status by SBA.

"(b) Small business certificates and statements that a bidder or of-

feror is a small business concern shall be effective, even though questioned in accordance with the terms of this subparagraph (b), unless the SBA, in response to such question and within the period specified in (3) below, determines that the bidder or offeror in question is not a small business concern * * *."

Since the Administrator was specifically authorized to define a small business concern, these regulations have the force and effect of law. Section 103.3(d) above states that a concern that meets the criteria of (a) and (b) of the section—it is admitted that when plaintiff put in its bid it did meet these criteria—may represent that it is a small business concern. Plaintiff did so represent in its bid. In such case, the regulation continues, "In the absence of a written protest, such concern shall be deemed to be a small business for the purpose of the specific Government procurement involved." There was no protest, and, hence, by virtue of plaintiff's representation, it was eligible to receive the award of the contract.

The Armed Services Procurement Regulations are even more precise. ASPR 1-703 says, "Except as provided in (b) below, the contracting officer *shall accept at face value* * * * (ii) a statement by the bidder or offeror that it is a small business concern." (Italics supplied.) Subsection (b) is not in point because no protest was filed by anyone.

When the time came for the contracting officer to make the award, the only thing that he had before him was plaintiff's representation that it was a small business concern. This had not been questioned by anyone. The representation had not been withdrawn. So far as that contract was concerned, plaintiff was a small business concern and eligible to receive the contract. The contracting officer accordingly awarded the contract to plaintiff, and the parties became bound according to its terms.

Plaintiff cannot escape from its obligation by pleading its failure to notify the contracting officer that its status had changed.

There seems to have been no intention on plaintiff's part to mislead the defendant. Its failure to notify the contracting officer of the change in its status seems to have been inadvertent, rather than deliberate. In the absence of fraud, defendant was equally bound on the contract with plaintiff. The regulation provides that in the absence of a question about a bidder's representation of his status, it shall be deemed to be a small business concern for the purpose of that contract. This means it shall be deemed to be one, whether it was one in fact or not. If plaintiff was a small business concern, defendant is of course bound on its contract with it. For the purpose of this procurement, plaintiff was a small business concern as defined in the Act and regulations.

If plaintiff meant to conceal its change in status, it cannot take advantage of its own wrong to avoid its obligation on the contract. Defendant might seek invalidation of a contract on the ground of fraud, but not he who practices the fraud. In this case fraud is not alleged.

After the award of the contract, Otis A. Springs, Jr., Executive Vice President of plaintiff, on April 29, 1958 confirmed the authority of L. R. Smith, the sales manager, to enter into binding contracts on behalf of plaintiff, and on April 30, 1958 plaintiff acknowledged receipt of the contract and verified the amounts stated therein. Later, on August 25, 1958, plaintiff submitted a pre-production sample, as it was required to do under the contract.

It was not until later that the new management became aware of the contract. When they did and discovered that a profit could not be made out of it, but that a loss would be sustained, they undertook to secure its cancellation. This was on September 23, 1958.

Plaintiff twice submitted the matter to the Comptroller General, who twice held plaintiff bound by the contract. We think the Comptroller General was clearly

right. Plaintiff cannot be relieved of the obligation the contract imposed upon it by pleading that it was not a small business concern at the time the contract was awarded. The Small Business Act was passed for the benefit of small business concerns. The award of a contract to one representing itself to be a small business was a benefit conferred, not a penalty imposed. The award of a contract to one representing itself to be one of those entitled to the benefits of the Small Business Act cannot be set aside at the instance of one receiving the benefit, on the ground that it is not entitled to it. This is a ground available only to the one injured by the error; not to one who benefits by it.

After the Comptroller General ruled against it, plaintiff refused to perform. The contracting officer then terminated the contract for default and relet it at a price in excess of the amount plaintiff had bid. This was paid by plaintiff. It is clear plaintiff is not entitled to recover this sum.

Plaintiff's motion for summary judgment is denied, defendant's like motion is granted, and plaintiff's petition is dismissed.